# Illinois Official Reports

## Appellate Court

---

*People v. Busse*, 2016 IL App (1st) 142941

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HARLEY BUSSE, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-2941 |
| Filed | December 27, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-15237; the Hon. Michael B. McHale, Judge, presiding. |
| Judgment | Sentence reduced. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Rachel M. Kindstrand, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Lisanne P. Pugliese, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justice Neville concurred in the judgment and opinion.<br>Justice Mason dissented, with opinion. |

**OPINION**

¶ 1    Harley Busse pilfered $44 in quarters from a vending machine on the University of Illinois at Chicago campus. For this, he was convicted of burglary committed in a school and sentenced to 12 years in the state penitentiary. He now claims that his sentence was excessive.

¶ 2    Busse has committed a number of similar crimes over the years, but not one of them has been either violent or serious. The trial court's discretion to sentence him was limited by his status as a Class X offender. It goes without saying that judges at all levels must follow the law and hold in check their natural sympathies. There are circumstances, however, when applying mandatory sentencing produces an anomalous and absurd result in a particular case.

¶ 3    This is one of those rare cases. Here, the 12-year Class X sentence imposes a punishment grossly disproportionate to the offense. As appellate court judges, we have to explain our decisions, and in this case, simply saying the sentencing judge followed the law, which he did, provides thin justification for the sentence—even fully acknowledging Busse's past crimes and incarcerations.

¶ 4    A paltry crime for a paltry sum does not warrant the unpaltry sentence of 12 years. We hold that the trial court did abuse its discretion in sentencing Busse, and we impose a six-year sentence.

¶ 5                                    BACKGROUND

¶ 6    Busse's conviction arose from an incident that took place on July 31, 2012, inside the science and engineering building at the University of Illinois at Chicago (UIC). Before trial, the trial court granted the State's motion to introduce evidence of three prior crimes to show Busse's *modus operandi*. These crimes were burglaries and a theft that involved coin-operated machines.

¶ 7    At trial, UIC police department Sergeant Jason Huertas testified that while patrolling at about 1:48 p.m. on July 31, 2012, he saw Busse leaving a UIC campus building at 845 West Taylor Street. Sergeant Huertas recognized Busse because he had previously given Busse at least two criminal trespass warnings. Sergeant Huertas continued driving, and Busse continued walking eastbound on Taylor Street. Sergeant Huertas stopped at the corner of Taylor and Halsted Streets, got out of his car, and approached Busse on UIC property. Busse had a black briefcase and wore a beige shirt and beige, khaki-style pants. Huertas testified that Busse had no valid reason to be on campus so he arrested him for criminal trespass and called UIC officer Scott Ruckrich to assist.

¶ 8    Officer Ruckrich searched Busse and found, concealed by Busse's T-shirt, two pieces of a wire clothes hanger about six to eight inches long with a curved end, fastened to Busse's inner shirt tag. Officer Ruckrich also found loose quarters inside the briefcase. Sergeant Huertas told Ruckrich to investigate whether UIC vending machines had been broken into.

¶ 9    Huertas examined a still-image photograph taken from a surveillance video of the vending machine area, which shows a computer room and an individual in the hallway. He testified that the individual in the photograph was wearing beige-colored pants and a beige- or white-colored shirt and was carrying something in his left hand. He further testified that he saw Busse wearing those same clothes on July 31, 2012, and based on the clothing, he was able to tell that the individual in the image was Busse. On cross-examination, Huertas testified that the

face of the individual in the photograph was not visible and it was difficult to identify the ethnicity as well as the height of the individual.

¶ 10    Mark Voirol, a vending technician, testified that he had been repairing and inspecting vending machines for 33 years. To determine whether a machine had been broken into, he would look for pry marks and if the door had been left open. He testified that a new way that people were stealing coins was by using a coat hanger or metal rod to "fish" change out of the coin changers. On July 31, 2012, he went with police to the UIC building at 950 South Halsted Street and examined the vending machines, including a coffee machine, two snack machines, a food machine, a cold food machine, and a change machine.

¶ 11    In the coffee machine, Voirol noticed that that the nickel and dime tubes were full and the quarter tube was empty. This was "pretty odd" because his company kept change in all of the machines, so if the quarter tube was empty then all of the other tubes would be as well. In the snack machine, he noticed that the nickels and dimes were full but that there were only five or six quarters left. Of these quarters, three were on the bottom upright on their edge, and a couple quarters were lying flat on top. He testified that this was "highly unusual," that the only way for that to happen was for the coins to be pushed from underneath, and a coat hanger was the most popular item used to push the coins up. When he opened the snack machine and saw the three quarters standing up and the others lying on top, "it pretty much told me that as they were fishing them out, they got stuck and they quit."

¶ 12    On cross examination, Voirol testified that he did not see any pry marks on the machines, the doors were closed, and there did not appear to be anything wrong with the machines. He further testified that he did not know how much change was in the machine before 12:30 p.m. on the day of the incident, that he inspected the machines between 4:30 p.m. and 5:30 p.m. or 6 p.m., and that he did not know when somebody had last visited the snack machine to keep it full.

¶ 13    Sergeant Huertas also testified about an earlier incident on February 8, 2009, at a UIC building at 950 South Halsted Street. While he was on foot patrol in the vending area in that building, he saw Busse shaking change out of a vending machine that had a wire hanger inside its return slot. The hanger was about six to eight inches on the straight end, was curved on one of the ends, and was similar to the hangers Busse was carrying on July 31, 2012. After Busse obtained the change from the vending machine, Huertas saw him put the change into his briefcase, walk to the other side of the hallway, stick the hanger into the return slot of a second vending machine, and begin to shake the change out of that machine. Sergeant Huertas then placed him under arrest.

¶ 14    The trial court found Busse guilty of one count of burglary committed in a school. At the sentencing hearing, Busse's counsel informed the trial court of errors in the presentence investigation, on page 7 in the social history section and on page 10 in the substance abuse section. The court made corrections in the social history section and added the illegal drugs mentioned by Busse's counsel in the substance abuse section.

¶ 15    The State argued for a "substantial sentence" based on Busse's 28 past convictions, including seven felony convictions. Several of Busse's past convictions were for burglary or theft from coin-operated machines. Because of this criminal history, Busse was subject to Class X sentencing.

¶ 16    Busse's counsel provided a letter from Busse's brother. The trial court reviewed the letter and orally summarized its contents: Busse's brother would provide Busse with a job, and their

mother was ailing with leukemia. Busse's counsel also provided a letter from the Department of Corrections stating that he was in the gang-free unit. Busse's counsel further explained to the trial court that Busse was 40 years old, that he was working at Easy Movers, and that his mother suffered from hairy cell leukemia and he worried about his mother and that she would die while he was in custody. Also, his mother lives in northern Minnesota and cannot visit him due to the distance. Busse's counsel also noted that, according to the presentence investigation report (PSI), defendant had about 20 jobs since he was 12 years old and asked the trial court to exercise leniency.

¶ 17    The trial court sentenced Busse to 12 years, saying that while the facts were not "particularly egregious," it was offset by Busse's "egregious" criminal history as a "career thief." Since "nothing up to this point has made an impression upon you *** maybe my twelve-year sentence will make an impression on you." The trial court denied his motion to reconsider sentence.

¶ 18    On appeal, Busse argues that his sentence is excessive given the nonviolent nature of the crime and his nonviolent background and that the trial court did not consider the "nature and circumstances" of his prior convictions. Busse further contends that the trial court did not consider any of the applicable mitigation evidence he presented or weigh the aggravating and mitigating factors. Busse argues that his sentence does not conform with the spirit and purpose of the law and requests that we reduce his sentence to the minimum term of six years or to a reduced prison term.

¶ 19                                STANDARD OF REVIEW

¶ 20    A reviewing court may only reduce a sentence under Illinois Supreme Court Rule 615 when the record shows that the trial court abused its discretion. *People v. Brown*, 2015 IL App (1st) 130048, ¶ 42. The reviewing court may not reverse the sentencing court just because it may have weighed the relevant factors differently. *People v. Streit*, 142 Ill. 2d 13, 19 (1991). "A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Fern*, 189 Ill. 2d 48, 54 (1999).

¶ 21                                     ANALYSIS

¶ 22    All sentences must reflect the seriousness of the offense committed and the objective of rehabilitating offenders to useful citizenship. *People v. Cooper*, 283 Ill. App. 3d 86, 95 (1996). The trial court considers all factors in mitigation and aggravation. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). We presume a trial court evaluates the relevant factors in mitigation before it, and that presumption cannot be overcome without affirmative evidence of the sentencing court's failure to do so. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010).

¶ 23    The record indicates the trial court's awareness of the mitigating factors. Although the trial court did not specifically state that it reviewed or considered the PSI, the trial court made notes on the PSI during the hearing, and both Busse's counsel and the State referenced the PSI during their respective arguments. The trial court also reviewed the letter from Busse's brother and provided an oral summary of the letter. The trial court considered the nonviolent nature of the crime, as it noted that the facts are not "particularly egregious." Moreover, Busse's counsel orally presented mitigating evidence, such as his age, the letter from the Department of Corrections, his mother's illness, his worrying about his mother and that she would die before

his release, and that he had about 20 jobs since age 12. "Where relevant mitigating evidence is before the court, it is presumed that the court considered it absent some indication in the record to the contrary other than the sentence itself." *People v. Dominguez*, 255 Ill. App. 3d 995, 1004 (1994).

¶ 24 With respect to Busse's argument that the trial court did not weigh the aggravating and mitigating factors, the record indicates that it weighed the nonviolent nature of the offense against his extensive criminal history. There is no requirement that the trial court must set forth every reason or specify the weight it gave to each factor when determining the sentence. *People v. Burgess*, 2015 IL App (1st) 130657, ¶ 227.

¶ 25 In addition, Busse contends the trial court did not consider the nature and circumstances of his prior convictions, including that the majority involved "low-level property crime" and the total absence of any history of violence. But the trial court expressly noted the theft-related nature of the prior convictions, after hearing argument about his criminal history.

¶ 26 The question remains whether Busse's sentence is excessive. Burglary committed in a school is a Class 1 felony with a sentencing range of 4 to 15 years. 720 ILCS 5/19-1(b) (West 2012); 730 ILCS 5/5-4.5-30(a) (West 2012). Because of Busse's prior convictions, he was sentenced as a Class X offender. 730 ILCS 5/5-4.5-95(b) (West 2012). Busse does not dispute his eligibility for a Class X sentence, and the 12-year sentence is well within the permissible statutory range of 6 to 30 years for a Class X offender. 730 ILCS 5/5-4.5-25(a) (West 2012).

¶ 27 If a sentence is within the statutory range, we presume it is not excessive. *People v. Tripp*, 306 Ill. App. 3d 941, 956 (1999). And while the trial court's discretion in sentencing is neither absolute nor unlimited, all too often, reviewing courts defer to trial courts by repeating boilerplate language. As the dissent points out, the abuse of discretion standard is undoubtedly deferential, but we must still review the trial court's decision. In Busse's case, this sentence is both "greatly at variance with the spirit and purpose of the law" and "manifestly disproportionate to the nature of the offense" and thus was an abuse of discretion. *Fern*, 189 Ill. 2d at 54. The 12-year sentence is far too long compared to the seriousness of the crime, imprisoning Busse for this term will not protect the public, and a lengthy prison term is no more likely to rehabilitate Busse than a far less onerous one.

¶ 28 In fashioning the appropriate sentence, the most important factor to consider is the seriousness of the crime. *People v. Willis*, 2013 IL App (1st) 110233, ¶ 123; *People v. Cox*, 377 Ill. App. 3d 690, 709 (2005). This principle reflects that of the Illinois sentencing statutes, whose purpose is, in part, to "[p]rescribe penalties which are proportionate to the seriousness of offenses." 720 ILCS 5/1-2(c) (West 2012); see also *People v. Hogue*, 1 Ill. App. 3d 881, 884 (1971) (applying statute in reducing sentence for burglary). The statute, in turn, stems from the Illinois Constitution. Ill. Const. 1970, art. I, § 11. Though Busse has not challenged his sentence on constitutional grounds, the principle that penalties must be determined according to the seriousness of the offense guides our consideration of whether his sentence was excessive.

¶ 29 Twelve years of imprisonment is grossly disproportionate to the offense of stealing $44 in loose change from a vending machine. Busse did not "break in" to the UIC building; he apparently walked inside during the middle of the day. Busse was not armed and did not use a weapon of any sort. No UIC students were threatened or harmed during his theft. He did not even damage the vending machines. It is difficult to conceive of an argument that Busse deserves 12 years in prison due to the seriousness of his offense.

¶ 30    Further, the factors that made Busse's sentence so severe had nothing to do with the small harm caused by his actions. Busse was convicted of burglary because he happened to steal from vending machines at UIC, a school from which he had previously been banned. 720 ILCS 5/19-1(a), (b) (West 2012). This made his crime a Class 1 felony (and eligible for Class X sentencing). 730 ILCS 5/5-4.5-95(b) (West 2012). If Busse had stolen $44 from vending machines at a different location, he would only have been guilty of a Class 4 felony and ineligible for Class X sentencing for this crime. 720 ILCS 5/16-1(b)(2) (West 2012). Busse's sentence could have been as little as one year. 730 ILCS 5/5-4.5-45(a) (West 2012).

¶ 31    We feel confident that the legislature created Class X sentencing to protect the public from murderers and rapists, not penny-ante pilferage. There is no serious argument that this sentence is necessary to protect the public from Busse. Again, he did not harm any other human beings in the course of his theft, nor does his criminal history reveal a tendency to do so. Busse's criminal history is boringly repetitive (nine previous convictions for stealing from coin-operated machines) but hardly serious. Of his 28 convictions, almost all involve theft, but not a single one involves violence against another person. Busse may be a "career thief" but not a dangerous or greedy one either. Even the economic harm that he caused to UIC in this case is so miniscule that imprisoning him for 12 years cannot be justified to prevent future $44 heists.

¶ 32    The desire to rehabilitate a defendant through imprisonment is a valid one. But the trial court's rationale for its sentence—to "make an impression" on Busse—is ineffectual based on Busse having spent a number of years in prison already. While it is certainly frustrating that Busse has continued along this path, it is unlikely that a further 12 years of imprisonment will rehabilitate him. If no rehabilitation can be achieved, then the only justification for a lengthy prison sentence is the desire to punish Busse—but how much punishment is called for when a man filches quarters from a vending machine?

¶ 33    There are not many cases where a reviewing court has held such a sentence excessive. See, *e.g.*, *People v. Stacey*, 193 Ill. 2d 203, 210-11 (2000) (25-year sentence for momentarily grabbing breasts of clothed young woman is excessive because it is too severe for offense). But the trial court's discretion to fashion a sentence is not "totally unbridled." (Internal quotation marks omitted.) *Brown*, 2015 IL App (1st) 130048, ¶ 42.

¶ 34    Our ruling today is based only on the petty nature of the offense being far out of proportion to the sentence. Busse may not necessarily be a sympathetic character, but it seems that his crime was motivated by poverty rather than malice. (He was living in a homeless shelter at the time of the offense.) Judges must keep in mind that poverty is not a crime; it is a condition, and every day presents a struggle for the poor to survive, to cope, to get by until tomorrow. When one is poor, drifting into petty crime can become an option, despite its undeniable risks. That, however, still does not warrant imposing a lengthy sentence, even after a series of petty crimes. Forty-four dollars does not warrant 12 years of incarceration.

¶ 35    The dissent would hold that Busse's sentence within the statutory range is not an abuse of discretion because of Busse's lengthy criminal record and his failure to show remorse for the crime. While the abuse of discretion standard is certainly deferential and as a reviewing court, we refrain from reweighing aggravating and mitigating factors, courts of appeal are not supposed to abdicate all reason. Again, Busse's criminal record is somewhat extensive; nevertheless, it is limited to petty offenses. And he has not escalated his crimes over the years, either in magnitude or violence. Perhaps there is something that can rehabilitate Busse—but

experience has shown us that spending time in prison certainly has not done the trick, and there is no reason to believe it will work better this time around.

¶ 36 We are statutorily required to sentence Busse to between 6 and 30 years of imprisonment. But as has been illustrated, this statutory requirement is nonsensical for this defendant who is not a danger to the community and whose prison stay, whatever its length, probably has little chance to rehabilitate him. And whatever the sentence, it will not reflect any public judgment that stealing from vending machines is a severe societal problem. Here, the statute operates as reflexive—an unthinking, mechanical application of laws that were never intended for a defendant such as Busse. This is unjust, not just to Busse, but to a public that will see this sentence and feel no confidence that our criminal justice system knows how to distinguish between a dangerous criminal and a homeless man who loots vending machines with a wire hanger.

¶ 37 Further, does his crime—pinching 176 quarters out of vending machines—require the taxpayers to pay close to 1,000,000 quarters to imprison him for 12 years? Even in the minimum-security facility where Busse is currently incarcerated, the average annual cost per inmate is $20,627; 12 years of incarceration would cost almost a quarter of a million dollars. The trial court's job is to construct a sentence that follows the law, and we do not expect trial courts to factor the costs of incarceration into that decision. But our legislature—the body that constrains our discretion to sentence people like Busse—should consider whether such lengthy and costly sentences are a good use of taxpayer dollars, where the ultimate price many times exceeds the social cost of the offense. We can do nothing more for Busse in this case. But our legislature is certainly able to amend the Class X sentencing statute to encompass felons who are violent, or whose crimes escalate in seriousness and harm to the public, without also taking in defendants whose crimes remain petty.

¶ 38 Under Illinois Supreme Court Rule 615, we reduce Busse's sentence to six years. Sentence reduced.

¶ 39 JUSTICE MASON, dissenting.

¶ 40 I respectfully disagree with my colleagues' decision to substitute their judgment for that of the circuit court. While a 12-year sentence for the theft of $44 in quarters from a vending machine is undeniably harsh, when Busse's background, both criminal and noncriminal, is examined, I cannot agree that his sentence constitutes an abuse of the broad discretion vested in the trial court.

¶ 41 According to the presentence investigation report, Busse, 40 years old at the time of sentencing, was raised by his mother in Minnesota. He reported a good relationship with her and his siblings. Busse's father committed suicide when Busse was 11. His mother remarried, and Busse reported a good relationship with his stepfather. Busse graduated from high school, where he played sports, and has pursued college-level courses, earning his paralegal certificate in 2010 while serving a sentence on another matter. He denied ever being suspended or expelled from school. He reported no physical or mental health issues. Busse likewise reported no alcohol or other substance abuse and denied that he experienced any medical problems due to substance abuse.

¶ 42 Against this unremarkable social background, Busse's criminal background stands in stark contrast. During the more than 20 years prior to his arrest in this case, Busse amassed more

than two dozen convictions. While my colleagues emphasize the nonviolent nature of Busse's crimes, consisting primarily of retail theft, burglary, and theft from coin-operated machines, Busse has nonetheless received 17 sentences of commitment to the Cook County department of corrections and six sentences of imprisonment in the Illinois Department of Corrections ranging in length from one to six years. Busse was sentenced to six years for burglary on August 18, 2009, and was released on February 7, 2012. While serving a period of mandatory supervised release, Busse committed his current offense on July 31, 2012, less than six months later.

¶ 43    The majority points out that Busse had been living in a homeless shelter for several months prior to his arrest. But he informed his probation officer that he planned to live with a friend in Minnesota after his release, and his defense counsel provided a letter from Busse's brother during the sentencing hearing indicating that Busse would have a job in Minnesota. Significantly, although the majority attributes Busse's extensive criminal history to poverty ("[w]hen one is poor, drifting into petty crime can become an option," (*supra* ¶ 34)), there is no indication that Busse grew up in poverty, and in fact, he reported working at 20 different jobs since the age of 12 and was employed by a moving company earning $10 an hour at the time of his arrest. And while I have no doubt that Busse's minimum-wage employment allowed him to merely eke out an existence, there is nothing in the record to support the conclusion that Busse's crimes beginning in 1991 (and continuing during a period when, according to him, he was attending the College of Du Page (1992) and DeVry Institute (1992-94)) were the result of abject poverty and intellectual deficiencies beyond his control. In short, nothing in the record supports the conclusion that poverty forced Busse to pursue a life of petty thievery.

¶ 44    Our supreme court has cautioned against a court of review substituting its judgment for that of a trial court simply because it would have weighed the relevant factors in aggravation and mitigation differently. *People v. Alexander*, 239 Ill. 2d 205, 213 (2010); *Stacey*, 193 Ill. 2d at 209. And because the majority concedes that the trial court evidently considered the factors in aggravation and mitigation relevant to Busse's sentence, I cannot agree that a term of 12 years is " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Alexander*, 239 Ill. 2d at 212 (quoting *Stacey*, 193 Ill. 2d at 210). It is only by taking Busse's social and criminal history out of context that the majority is able to so characterize his current sentence.

¶ 45    At bottom, my colleagues conclude that any sentence other than the minimum would constitute an abuse of discretion, a result incompatible with the deferential standard of review. *Alexander*, 239 Ill. 2d at 212 (recognizing a trial court's "broad discretionary powers in imposing a sentence" and that "its sentencing decisions are entitled to great deference"). And, as the majority also concedes, the length of Busse's sentence is the direct product of a decision by the legislature, which a trial court is not free to ignore, to impose harsher sentences on repeat offenders. See 735 ILCS 5/5-4.5-95(a) (West 2012). The majority's real issue is that Busse, a petty thief, is eligible for Class X sentencing along with "murderers and rapists." *Supra* ¶ 31. But Busse's eligibility for a Class X sentence is a matter determined by the legislature, and while I would wholeheartedly support removing nonviolent "petty thievery" from the list of convictions that can render a defendant Class X eligible, this court is not the branch of government to which that decision has been committed.

¶ 46    Busse has already once been sentenced to a term of imprisonment of six years. I agree with the majority that it apparently did no good given the speed with which Busse reoffended

following his release. But I cannot agree that the answer is to simply keep reimposing the minimum term or that a trial judge necessarily abuses his discretion when he concludes that such a result is unwarranted.

¶ 47    Focusing on the cost of Busse's incarceration does not lead to a different conclusion. What the majority overlooks is the incremental cost of Busse's repeated incarcerations, *i.e.*, it is just as costly to keep reincarcerating felons for short periods of time as it is to impose one longer sentence in the hopes that an individual like Busse will appreciate the increasing risk his course of conduct poses and redirect his intellect and energies to noncriminal pursuits. And it does not require much imagination to predict that upon his release from his current period of incarceration, Busse is likely to reoffend, just as he has consistently for the past 20 years. Thus, while the trial court certainly could have exercised its discretion to impose another six-year term for Busse's current offense, nothing obligated it to do so.

¶ 48    Particularly significant is the fact that Busse declined the opportunity to speak in allocution at his sentencing and in the PSI contended that, despite a still video image showing an individual dressed like Busse inside a UIC building and the fact that he was in possession of bent hangers and 176 quarters when he was arrested, the arresting officer made up the whole story. According to Busse, he was on a public sidewalk on his way to meet his probation officer when he was arrested and searched for no reason. Although the majority fails to mention this aspect of Busse's sentencing, a defendant's lack of remorse has long been recognized as an appropriate factor to take into account at sentencing. See, *e.g.*, *People v. Banister*, 232 Ill. 2d 52, 92 (2008) (" 'This court has consistently held that a convicted defendant's remorse or the absence of it is a proper subject for consideration at sentencing.' " (quoting *People v. Burgess*, 176 Ill. 2d 289, 317 (1997))); *People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011) ("the trial court can properly consider a defendant's lack of remorse or denial of guilt as it affects his prospects for rehabilitation"). This, more than anything else, convinces me that the trial judge properly decided that the minimum Class X sentence was not warranted. Further, because the 12-year sentence is still toward the low end of the possible range of sentences, I cannot find that it constitutes an abuse of discretion and would, therefore, affirm.