**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200135-U

Order filed June 11, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) | |
| | ) | Appeal No. 3-20-0135 |
| v. | ) | Circuit No. 17-CF-310 |
| | ) | |
| LATODD EZELL WILLIAMS, | ) | Honorable |
| | ) | Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Daugherity and O'Brien concurred in the judgment.

**ORDER**

¶ 1      *Held*: (1) Trial counsel did not provide ineffective assistance by failing to move to dismiss for a violation of defendant's right to a speedy trial. (2) Defendant was not deprived of his constitutional right to conflict-free counsel. (3) The circuit court did not improperly consider an aggravating factor in sentencing or fail to consider a statutory factor in mitigation.

¶ 2      Defendant, LaTodd Ezell Williams, appeals his convictions and sentences for aggravated battery and unlawful possession of a weapon by a felon (UPWF). Defendant contends that:

(1) trial counsel provided ineffective assistance by failing to renew defendant's motion to

dismiss for a violation of his statutory right to a speedy trial, (2) his constitutional right to conflict-free counsel was violated when the court reappointed trial counsel to represent him during posttrial proceedings, and (3) he is entitled to have his sentences reduced or the matter remanded for resentencing because the Peoria County circuit court considered an improper aggravating factor and failed to consider a statutory mitigating factor in sentencing him. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant with aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2016)) and UPWF (*id.* § 24-1.1(a)). Defendant was arrested on April 10, 2017, for shooting Wallace Wilson and remained in custody through trial.

¶ 5        A probable cause hearing was held on April 11, 2017, and the public defender was appointed. Defendant was arraigned on April 27 and a status conference was set for June 14 with trial on June 26. On June 14, defense counsel requested a continuance and the State did not object. The court advised defendant that the June 26 date was off and that he would be back on August 10 for a pretrial conference and August 21 for trial. The court then asked if defendant understood and agreed, and defendant responded affirmatively. Notably, had the defense not requested a continuance, August 8 would have been the last day for the State to bring defendant to trial and be in compliance with the requirement that he be tried within 120 days of the date he was taken into custody. See 725 ILCS 5/103-5(a) (West 2016). On August 10, both parties sought and were given a continuance. A status conference was set for September 21 and a jury trial was scheduled for October 16.

¶ 6        On October 16, 2017, the parties sought a joint continuance to October 26 in an attempt to reach a plea agreement. Defense counsel made clear that the trial would not take place on

2

October 26 when she stated that "[a]t that point on the 26th if my client wishes to still proceed to trial, we would set a trial setting at that point." A plea agreement was not reached, and on October 26, defense counsel stated that "we would ask that this be set for trial." After discussing the potential sentencing ranges, the court asked if there was anything else, and the State requested that the matter be set for trial on January 22, 2018, with a scheduling conference on January 11. Defense counsel replied "[t]hat's fine, Your Honor."

¶ 7        On November 30, 2017, defendant filed, as a self-represented litigant, a motion asking the court to acknowledge his speedy trial rights, which defense counsel considered as a motion to dismiss. At the status conference on January 11, 2018, defense counsel did not adopt the motion because she did not believe defendant's speedy trial rights had been violated.

¶ 8        On the trial date, January 22, 2018, defense counsel requested a continuance, and the matter was set for trial on April 16. On April 16, defense counsel answered ready for trial, but the State asked for a continuance. Over defendant's objection, the trial was continued to May 14. On May 14, defendant answered ready for trial and waived his right to a jury trial. A bench trial was set for the following day. The bench trial was held on May 15, and defendant was found guilty of aggravated battery and UPWF.

¶ 9        At the sentencing hearing, the State argued for the sentences to run consecutively and asked that defendant be given a substantial sentence. Defense counsel argued for the sentences to run concurrently and requested a sentence on the lower end of the range. Defense counsel noted that defendant had three children that he parented. Counsel did not elaborate on this point, but the presentence investigation report (PSI) and information from defendant's mother indicated that he had three children, ages five, three, and one, that he spent time with them, and that his mother brought the children to visit him in jail.

¶ 10    The court stated that it considered the PSI, the evidence, the arguments, the statutory factors in aggravation and mitigation, the history and character of defendant and the nature and circumstances of the offense. The court further noted that the findings it was making were not exclusive and did not mean that all other factors had not been considered.

¶ 11    The court explained that "[t]he fact that this victim was harmed is built into the nature of the Class X offense. That's why the legislature has put this near the top of the severity of offenses, Class X, 6 to 30 years, no probation, 85 percent to be served. So that's inherent in the offense." The court continued that it "does acknowledge as it must and can't ignore the harm that was caused to the victim in this case."

¶ 12    As to the hardship on defendant's dependents, the court stated that "he's got three kids. It's already hard on them. He doesn't even know if he has a child support order. He's being supported by his parents at age 26. His parents. His mother and family so recognizing there's hardship, but these kids of yours had hardship before you committed this offense." The court also touched on this issue when acknowledging the difficulty defendant's mother must have faced raising defendant on her own, by stating that "sadly history repeats itself as his children will be raised for a long time, temporary in his lifetime, without a father in their life."

¶ 13    The court sentenced defendant to concurrent terms of 17 years' imprisonment for aggravated battery and 7 years' imprisonment for UPWF. Defense counsel advised the court that defendant would ultimately like to appeal but they would be filing a motion to reconsider sentence first. However, defense counsel did not file the motion to reconsider. Defense counsel filed a notice of appeal nearly one year after the sentencing hearing. On August 29, 2019, this court dismissed the appeal on defendant's motion due to lack of jurisdiction.

¶ 14　　　　　On September 6, 2019, defendant filed as a self-represented litigant a postconviction petition asserting that defense counsel provided ineffective assistance by failing to file a timely motion to reconsider sentence and notice of appeal. Defense counsel and the State both acknowledged the merit of the petition and it was granted by an agreed order. The court vacated defendant's sentence and reset the matter for new posttrial motion and sentencing hearings. The same attorney who represented defendant during the prior proceedings continued to represent defendant.

¶ 15　　　　　Defense counsel filed a motion for judgment of acquittal notwithstanding the court's findings or for a new trial. That motion was denied and a new sentencing hearing was held. After ensuring the judge read the transcript from the prior sentencing hearing, defense counsel and the State adopted their prior sentencing arguments. The court indicated it reviewed the prior sentencing hearing transcript in detail, considered the updated PSI, arguments, and the statutory factors in aggravation and mitigation. The court adopted its prior findings and stated that "just because some things haven't been mentioned today doesn't mean they haven't been considered previously or at all." The court noted that it had "due regard for the nature of circumstances of the offense, including the fact that a 6-to-30 sentence was built into the type of offense that he was found guilty of." The court again sentenced defendant to 17 years' imprisonment for aggravated battery and 7 years' imprisonment for UPWF.

¶ 16　　　　　Defendant filed a motion to reconsider sentence, which the court denied. Defendant appeals.

¶ 17　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 18　　　　　　　　　　　　　　　A. Ineffective Assistance

¶ 19    Defendant contends that defense counsel provided ineffective assistance by failing to renew his motion to dismiss based upon a violation of his statutory right to a speedy trial. We find that counsel did not provide ineffective assistance because defendant's statutory speedy trial right was not violated.

¶ 20    To prevail on a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "An attorney's failure to seek discharge of his client on speedy-trial grounds generally will be deemed ineffective assistance of counsel if there is a reasonable probability that the defendant would have been discharged had a timely motion for discharge been made and no justification has been proffered for the attorney's failure to bring such a motion." *People v. Staten*, 159 Ill. 2d 419, 431 (1994).

¶ 21    Under section 103-5 of the Code of Criminal Procedure of 1963 (Code), a defendant is to be tried within 120 days from the date he was taken into custody unless the delay is occasioned by defendant. 725 ILCS 5/103-5(a) (West 2016). "Delay occasioned by the defendant shall temporarily suspend for the time of the delay the period within which a person shall be tried." *Id.* § 103-5(f). A delay is considered to be occasioned by defendant if he causes or contributes to the delay. *Staten*, 159 Ill. 2d at 433. "Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2016).

¶ 22    Here, defendant asserts that 140 days, attributable to the State, passed between when he was taken into custody and when he was tried. The State only challenges one period of time that defendant has attributed to it: the 35 days between October 26, 2017, and November 30, 2017. The State contends that this delay is attributable to defendant. Leading up to the October 26

6

hearing, the parties agreed to a continuance to attempt to negotiate a plea agreement. Defense counsel's remarks in asking for the continuance show that she specifically contemplated that the matter would not go to trial on October 26 but instead, if a plea agreement was not reached, the trial would be set at some future date. Additionally, on October 26, defense counsel did not answer ready for trial, and instead agreed to a trial date, nearly three months later, suggested by the State. At no time on October 26 did defense counsel or defendant object to setting the trial for January 22.

¶ 23    Because defendant, through counsel, sought the continuance that resulted in the October 26 hearing date and specifically contemplated any trial would take place at another date after October 26, defendant caused or contributed to the delay past October 26. And considering defense counsel agreed to the January 22 trial date and no objection was made to that date, as would be required to establish that defendant opposed the delay, we conclude that the disputed period of delay between October 26, 2017, and November 30, 2017, was occasioned by defendant. When we take those 35 days away from the 140 that defendant has attributed to the State, we are left with 105. Therefore, defendant was tried within the 120 days contemplated by section 103-5(a) of the Code, and there was no violation of his statutory right to a speedy trial. It cannot, therefore, be said that there was a reasonable probability that he would have been discharged had his counsel filed a motion to dismiss, and thus, counsel did not provide ineffective assistance for failing to do so.

¶ 24                                B. Conflict of Interest

¶ 25    Defendant argues that his counsel had a *per se* conflict of interest after she was found to have provided ineffective assistance by failing to timely file a motion to reconsider sentence and

appeal. We disagree because this situation is not one of the three situations where our supreme court has determined a *per se* conflict exists.

¶ 26        "It is well settled that a criminal defendant's sixth amendment right to effective assistance of counsel includes the right to conflict-free representation." *People v. Fields*, 2012 IL 112438, ¶ 17. "[A] *per se* conflict arises when a defendant's attorney has a tie to a person or entity that would benefit from an unfavorable verdict for the defendant." *Id.* Our supreme court has found three situations where such a conflict exists: "(1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved with the prosecution of defendant." *Id.* ¶ 18.

¶ 27        Defendant does not argue that his situation fits into one of these three scenarios, but instead he asserts that just because those are the only three situations our supreme court has identified does not necessarily mean those are the only situations where a *per se* conflict exists. While the *Fields* court indicated it was not foreclosing the possibility of other categories of *per se* conflicts, (*id.* ¶ 37 (stating that it need not consider whether additional situations might be found where a *per se* conflict exists)), it emphasized that long standing precedent had only found the three categories noted above and concluded the appellate court erred in finding an additional basis for a *per se* conflict in that case. *Id.* ¶ 41.

¶ 28        Looking at the situation involved in this case, we cannot say that it merits a departure from that long-standing precedent. This is not, as defendant contends, a situation where certain facts about counsel's status engendered a disabling conflict. The three categories of *per se* conflicts all involve situations where, because of counsel's relationship with some *other* person

8

or entity, one could reasonably question whether counsel would be able to fully represent defendant's best interests or whether counsel's loyalties would be torn between defendant and another individual or entity. In contrast, here there is no contention that defense counsel had any such relationship.

¶ 29    In addition, while it is possible that defendant's assertion that his counsel was providing ineffective assistance could create an adversarial relationship, there is no evidence that that is the case here. Specifically, defendant's ineffective assistance claim was limited to the narrow issue of counsel's failure to file a motion to reconsider sentence and a timely appeal, and he did not otherwise take issue with her representation. Counsel readily admitted her failure to file a motion to reconsider and notice of appeal, and she facilitated defendant's prompt relief by having his sentence vacated and the matter set for new posttrial proceedings. Further, not only would counsel derive no benefit from defendant receiving an unfavorable result at the subsequent posttrial proceedings, such a result would place her at some professional risk. Thus, there is nothing inherent in this situation that engendered the disabling conflict required for a *per se* designation. We conclude that counsel did not labor under a *per se* conflict of interest.

¶ 30                                        C. Sentencing

¶ 31    Defendant argues that the court improperly considered serious harm to the victim as an aggravating factor in sentencing and that the court failed to consider the hardship to his dependents as a mitigating factor in sentencing him. We disagree, as the record establishes that the court did not improperly consider serious harm to the victim, and it considered all of the relevant factors in mitigation.

¶ 32    "It is well settled that a trial judge's sentencing decisions are entitled to great deference and will not be altered on appeal absent an abuse of discretion." *People v. Jackson*, 375 Ill. App.

9

3d 796, 800 (2007). A reviewing court "must not substitute its judgment for that of the trial court simply because the reviewing court would have weighed the factors differently." *Id.* at 800-01. A sentence that falls within the statutorily prescribed range is presumptively valid. *People v. Busse*, 2016 IL App (1st) 142941, ¶ 27. We presume the circuit court considered the relevant factors and mitigation evidence presented. *People v. Wilson*, 2016 App (1st) 141063, ¶ 11. The court is not required to "recite and assign a value to each factor." *Id.* It is defendant's burden to show that the court did not consider the relevant factors. *Id.* Additionally, "a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense." *People v. Phelps*, 211 Ill. 2d 1, 11 (2004).

¶ 33         Initially, we note that defendant's sentence of 17 years' imprisonment falls within the statutory sentencing range of 6 to 30 years' imprisonment and is thus, presumptively valid. See 720 ILCS 5/12-3.05(h) (West 2016) (providing that an aggravated battery as defined by subsection (e)(1) is a Class X felony); 730 ILCS 5/5-4.5-25(a) (West 2016) (providing a sentencing range of 6 to 30 years' imprisonment for Class X felonies). Further, the record belies defendant's assertion that "[t]he court improperly considered an element of the offense, the serious harm suffered by the victim, in aggravation." The court expressly acknowledged that harm, not serious harm, was an element of the offense, and it explained that harm to the victim was the reason why the legislature assigned a sentencing range of 6 to 30 years' imprisonment to the offense. See 720 ILCS 5/12-3.05(h) (West 2016); 730 ILCS 5/5-4.5-25(a) (West 2016). The court's comment simply acknowledged the nature of the offense. See *People v. Tolliver*, 98 Ill. App. 3d 116, 117-18 (1981) (recognizing that a court may consider the nature and circumstances of the offense in sentencing a defendant). The court never indicated that it was considering harm,

10

let alone serious harm, as a factor in aggravation. See 730 ILCS 5/5-5-3.2(a)(1) (West 2016) (listing, as a factor in aggravation, that defendant's conduct caused or threatened serious harm).

¶ 34    Moreover, even if it could be said that the court considered serious harm to the victim as a factor in aggravation, serious harm to the victim is not a factor inherent in the offense of aggravated battery as defendant was charged and convicted. Specifically, that statute provides that one commits an aggravated battery when, in committing a battery, he or she discharges a firearm and "and causes any injury to another person." 720 ILCS 5/12-3.05(e)(1) (West 2016). The term "any injury" does not necessarily equate to serious harm as there is the potential that minor injuries could lead to a conviction under that statute and a minor injury, while it is harm, is not serious harm.

¶ 35    Defendant also contends that the court failed to properly consider the hardship to defendant's children as a factor in mitigation. However, the court stated that it considered the statutory factors in mitigation and noted that just because something was not mentioned did not mean it was not considered. The court specifically noted the children already had hardship and that history was repeating itself because the children would be raised for a substantial time without their father.

¶ 36    Defendant specifically faults the court for purportedly not considering the potential disruption to the caregiving of an infant where defendant had a one-year-old child, whether the children had special needs, and whether defendant helped with the children's educational and medical needs. But the court need not recite each factor it considers. See *Wilson*, 2016 App (1st) 141063, ¶ 11. Moreover, there was no evidence presented that there would be any disruption to the caretaking of any of defendant's children, especially considering there was no evidence that defendant was responsible for taking care of the children. Rather, the evidence simply showed he

11

spent time with the children. Likewise, there was no evidence that defendant was involved in any way with the children's educational or medical needs or that the children had any special needs. It is unclear what the court could have considered or commented on in that regard.

¶ 37    Defendant does not cite to any evidence to rebut the court's comment that it considered hardship to defendant's children as a factor in mitigation or the presumption that the court considered all mitigating factors. Absent such evidence, and in light of the court's comments indicating that it considered the mitigating evidence, we conclude that the court did not abuse its discretion in sentencing defendant.

¶ 38                                III. CONCLUSION

¶ 39    The judgment of the circuit court of Peoria County is affirmed.

¶ 40    Affirmed.