NOTICE

Decision filed 07/14/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210257-U

NO. 5-21-0257

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 19-CF-77 |
| | ) | |
| FREDERICK M. SAVAGE, | ) | Honorable |
| | ) | Richard A. Brown, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Because we do not agree with the defendant that when sentencing the defendant, the trial judge improperly punished the defendant for his conduct on probation, and do not agree that the trial judge failed to adequately consider the seriousness of the offense, the defendant's lack of any prior felony convictions, the defendant's lack of risk to the community, or the defendant's rehabilitative potential, we conclude that the trial judge did not abuse his discretion when he sentenced the defendant to three years in prison instead of either the minimum sentence of two years' imprisonment or extended probation. Therefore, because the trial judge did not err in this case, the defendant's plain-error argument fails, and we affirm the defendant's sentence.

¶ 2    In this direct appeal from the circuit court of Randolph County, the defendant, Frederick M. Savage, asks this court to reduce his three-year sentence to the Illinois Department of Corrections (IDOC) following the revocation of his probation to the minimum two-year sentence,

1

or to remand for a new sentencing hearing at which a sentencing alternative such as extended probation is to be imposed. For the following reasons, we affirm the defendant's sentence.

¶ 3                                    I. BACKGROUND

¶ 4    On January 11, 2021, the petition to revoke probation that is at issue in this appeal was filed. Therein, the State alleged that "on June 10, 2019, [the defendant] was adjudicated guilty of the offense of Unlawful Possession of Methamphetamine—Class 3 Felony," and was sentenced to a term of probation of two years. The State further alleged that conditions of the defendant's probation included that the defendant was to undergo a substance abuse assessment and "participate in and complete any treatment deemed necessary," as well as pay court costs, and that during the pendency of his term of probation, the defendant violated his probation because he "failed to comply with treatment recommendations," which led to the closing of his file. The petition also alleged that although the defendant was recommended for "residential treatment" of his substance abuse issues, the defendant had "not provided any verification that he completed a residential program, or any other type of substance abuse services." Finally, the petition alleged that the defendant "failed to make regular payments" toward his court costs and had "a balance of $1,523.00 remaining."

¶ 5    At a preliminary hearing on the petition, on January 27, 2021, the defendant stated the following with regard to the allegations in the petition: "I was under the impression that the TASC—the treatment was voluntary. I—I mean, I wouldn't have—you know, I wouldn't have just blown them off and not cooperated. And as far as the money situation, sir, I was behind the ball. I'd been working for—since, I believe, May." Thereafter, counsel was appointed to represent the defendant with regard to the petition.

¶ 6    On April 19, 2021, a hearing was held on the petition, at which the defendant entered an "open admission" to the allegation in the petition that he failed to comply with the treatment

2

recommendations made in this case. The trial judge questioned the defendant about his admission, after which the trial judge made the finding that the admission was knowing and voluntary. The State then provided a factual basis for the admission, stating that if called to testify, Daryl Frederking of the Randolph County Probation Department "would testify that the defendant failed to comply with treatment recommendations made by TASC, T-A-S-C, and that his file was closed unsuccessfully on January 22, 2020," as well as "that TASC had made a recommendation [that the defendant] complete residential treatment," which the defendant had failed to do. The State asserted that it "would then offer a certified copy of the conditions of probation which would indicate the defendant was ordered to do any counseling as directed by TASC or the probation department including, but not limited to, residential treatment." Defense counsel did not object to the factual basis and neither did the defendant. The trial judge accepted the defendant's open admission and set the matter for a sentencing hearing.

¶ 7     On May 21, 2021, the sentencing hearing was held. The trial judge asked the parties if they received copies of the presentence investigation report (PSI) that was filed on May 13, 2021, and both counsel for the State and defense counsel indicated that they had received it and had no additions, deletions, or corrections to make to it. Thereafter, the trial judge stated that he would "accept the pre-sentence investigation as written and make it part of the court record for purposes of this sentencing hearing." No additional evidence was adduced by either party at the hearing, although each party offered argument. The State argued that it was clear that the defendant had a substance abuse problem. Referencing the PSI, the State noted "that the defendant came to probation one time incredibly intoxicated, blew a one-nine-three, has not cooperated with TASC, reported to the probation department for this presentence investigation and admitted to consuming three hard shots of liquor as well as methamphetamine on April 18, 2021, presumably whenever he reported." The State continued that it understood the defendant's expected argument "that we

3

don't need to send a nonviolent person who is addicted to drugs to the Department of Corrections," but argued that Illinois law provided for prison as a possible penalty for possession of methamphetamine, and that the defendant had admitted that he did not comply with the treatment requirements of his probation. Referencing new charges for possession of a controlled substance that were filed against the defendant in Perry County, Missouri, during the pendency of his probation term in this case, the State noted that although it was "in no way trying to hold this against him as another incident of prior history of criminality and delinquency," nevertheless, "it is what it is." Defense counsel objected to any consideration of the new arrest and charges.

¶ 8     Thereafter, the State focused its argument on the defendant's prior criminal history, as described in the PSI, which the State argued showed a misdemeanor "criminal history dating back to 1984," but did not include any felonies. The State noted nine prior misdemeanors, including offenses involving theft, battery, assault, domestic battery, criminal damage to property, criminal trespass, and possession of drug paraphenalia. With regard to factors in aggravation, the State argued that (1) it was "obvious at this point that the defendant is unlikely to comply with a term of probation based upon his violation of his previous probation, based upon the fact that he can't complete services that he was asked to do," (2) the defendant clearly had "a prior history of criminality," (3) a sentence to IDOC "may be necessary to deter others," and (4) a sentence to IDOC would be "not just to help rehabilitate him, which I really believe can happen with a sentence to the Department of Corrections, but also if you show others that are on probation that when they are told by the Court to do these things, that they have to do it." Accordingly, the State asked the trial judge to sentence the defendant to a term of imprisonment of three years, and "that he be recommended for placement with Southwestern Illinois Correctional Center if he wants it." The State added that it believed such a sentence would be "a perfect opportunity for [the defendant] to get his life straightened out."

4

¶ 9    Defense counsel argued that the defendant's addiction was an illness no different from other physical illnesses, and that the defendant needed treatment. He argued that a sentence to IDOC would impose a harship on both the defendant and his family, and would impose, *inter alia*, an unnecessary financial burden on the people of the state of Illinois. He argued that treatment is not always effective the first time, but that even the State conceded that imprisonment was not likely to deter "the general public." He further argued that in IDOC, the defendant would not get the treatment he needed, and that the defendant's criminal history from the 1980s and 1990s was not "very relevant" to the defendant's present life and most recent offenses, which simply evidenced a substance abuse problem. He argued that the defendant at present was "not a man that's going out and is a danger to the general population," but instead was a danger only to himself. He noted the defendant's recent employment history, and referred to the defendant as "a productive member of society," who was "trying to become a better member of society." He recognized that prison was sometimes necessary, but argued that he did not believe it was necessary in this case, and that the same goals could be achieved by again ordering treatment for the defendant.

¶ 10    The defendant was given the opportunity to speak, but declined to do so. Thereafter, the trial judge stated that he had considered the following factors in aggravation: (1) a sentence to IDOC may be necessary to deter others from committing the same crime, (2) the defendant had a history of prior criminal activity, and (3) the defendant was unlikely to comply with a period of probation. The trial judge stated that he believed the PSI showed "that there was a great effort made to try to get counseling for defendant's substance abuse, but it failed," and that the defendant continued "while on probation using methamphetamine as recently, according to this report, as April the 18th, 2021." He noted that the defendant had "reported to the probation department, they write, in an intoxicated condition," and that the defendant had "proven" that he was unlikely to comply with probation. The trial judge thereafter stated the following:

5

"Factors of mitigation. The defendant neither caused nor threatened to cause serious harm to another person. The Court's considered the nature of the offense, the attending circumstances, the history, character and propensities of the offender, the chances of his reform, our efforts we've made to try to reform him, the objective of restoring the offender to useful citizenship. The Court finds that additional probation would deprecate the seriousness of the offender's conduct and would simply be inconsistent with the ends of justice."

¶ 11 The trial judge then sentenced the defendant to three years in IDOC, to be followed by one year of mandatory supervised release (MSR), with all court costs waived. Defense counsel asked the trial judge to "vacate anything that's due owing," which the trial judge agreed to do. The trial judge addressed the defendant as follows:

"I hope that a year in corrections will get you to think about your drug addiction, and when you get out of there, hopefully you'll be—been away from it long enough that you can make the intelligent decision to quit using. Because I tried to work with you. I tried very— I really wanted you to be successful on your probation, but I could never get your cooperation. So, I mean, many people come out of the Department of Corrections, and they say I've had enough and don't go back to using again. So really we're leaving it all up to you what happens with you."

¶ 12 The trial judge also advised the defendant of his appeal rights. Following the hearing, the trial judge entered a written order in which he vacated the defendant's outstanding balance owed on fines and court costs, as well as a mittimus that reflected the defendant's sentence to IDOC. This appeal followed.

6

¶ 13                    II. ANALYSIS

¶ 14    On appeal, the defendant's sole contention is that the trial judge erroneously sentenced the defendant to a three-year term of imprisonment, rather than to a two-year term of imprisonment or to extended probation. In support of this contention, the defendant argues that the trial judge abused his discretion in sentencing the defendant because the trial judge "improperly punished him for his conduct on probation and failed to adequately consider the seriousness of the offense, his lack of any prior felony convictions, him not being a risk to the community, and his rehabilitative potential." The defendant argues, *inter alia*, that "it is notable that the court indicated in aggravation that a sentence is needed to deter others from committing the same crime," even though the State and the defendant both "recognized that sending an addict to prison will not deter others." He argues that "[d]eterrence for other nonviolent drug-addicted individuals should not have been considered in aggravation because neither [of] the attorneys argued for it and because it is not supported by science." He further argues that the trial judge "had other options such as periodic imprisonment, impact incarceration, probation, or conditional discharge" available by statute, although the PSI did not mention these options. He thereafter raises other issues with the PSI, including the fact that it was prepared by the same probation officer who filed the probation violation report that led to the State's petition to revoke the defendant's probation, which he insinuates may indicate bias against the defendant by the probation officer. He adds that although he "is not making a separate argument about the PSI's shortcomings[,] it should be considered by this Court as part of the totality of the circumstances at sentencing that led to [the] excessive and disproportionate three-year sentence." The defendant posits that "his sentence is both 'greatly at variance with the spirit and purpose of the law' and 'manifestly disproportionate to the nature of the offense,' " and therefore constitutes an abuse of discretion. He further posits that his "sentence is far too long compared to the seriousness of the crime." The defendant concedes that no posttrial

motion was filed in this case, but contends that this court should review his arguments under the plain-error doctrine.

¶ 15    The State argues that plain-error review is not appropriate in this case because there was no error at all. The State argues that the defendant's sentence was not an abuse of discretion, and therefore was not in error, because, *inter alia*, (1) the sentence is not manifestly disproportionate to the offense, (2) the unobjected-to PSI was "unremarkable," and in fact was similar to many, perhaps most, PSI reports, (3) the trial judge considered all relevant factors in aggravation and in mitigation, and made the factual finding that the defendant was unlikely to comply with probation, and (4) the defendant's failure to comply with probation in both this case and an earlier Florida case was well-documented and supported the trial judge's findings of fact and his ultimate decision. The State posits that in light of the foregoing, the trial judge "could reasonably surmise that giving [the] defendant *more* probation was a prescription for failure," and posits that the defendant is simply asking this court to reweigh the sentencing factors in aggravation and mitigation, which is not appropriate, because it is not the proper role of a reviewing court in this situation. (Emphasis in original.) The State further notes that notwithstanding subsequent action in the Illinois General Assembly to possibly amend the sentencing options for this crime, the trial judge considered the correct sentencing options at the time he sentenced the defendant, and lawfully could have given the defendant up to five years in IDOC in this case.

¶ 16    In reply, the defendant stresses that his argument in this appeal is "that his sentence is excessive because it was imposed *without* regard for his particular facts and circumstances—his addiction, his attempts to stay employed during the global pandemic, the fact that the parties agreed that there is no public deterrence when a person suffers from an addiction, and his rehabilitative promise." (Emphasis in original.) He argues that his point in citing the cases cited in his opening brief was to demonstrate the principle "that any sentence that is grossly disproportionate to the

8

seriousness of the offense is excessive," and argues that he seeks "a recognition that the community's standard of moral decency is changing with regard to lengthy prison sentences, even for those addicted to drugs." He denies that he is asking this court to reweigh the sentencing factors, and reiterates, *inter alia*, that he did not harm anyone other than himself, and did not threaten to harm anyone.

¶ 17    As the State notes, plain-error review is not available where there has been no error at all. See, *e.g.*, *People v. Herron*, 215 Ill. 2d 167, 187 (2005). To determine whether there was error in this case, we must consider the following well-established precepts regarding sentencing. This court is authorized by the rules of the Illinois Supreme Court to reduce a defendant's sentence only if the record shows that the trial judge committed an abuse of discretion when fashioning the sentence. *People v. Busse*, 2016 IL App (1st) 142941, ¶ 20. We are not authorized to reduce a sentence merely because we may have weighed the relevant factors differently. *Id*. If a sentence is within the statutory limits, we may not deem it to be excessive unless we conclude that the sentence is at great variance with the spirit and purpose of the law in question, or that it is manifestly disproportionate to the nature of the offense. *Id*. Every sentence must reflect both the seriousness of the crime committed and the objective of rehabilitating offenders to useful citizenship. *Id*. ¶ 22. "In fashioning the appropriate sentence, the most important factor to consider is the seriousness of the crime." *Id*. ¶ 28. The trial judge is required to consider all factors in aggravation and mitigation, and we will presume the trial judge has done so unless there is "affirmative evidence" of the trial judge's failure to do so. *Id*. ¶ 22. "There is no requirement that the trial court must set forth every reason or specify the weight it gave to each factor when determining the sentence." *Id*. ¶ 24. Nevertheless, a trial judge's "discretion to fashion a sentence is not 'totally unbridled' " (*id*. ¶ 33), and if properly presented with the issue, this court has a duty to review the sentencing decision for error (*id*. ¶ 27).

¶ 18    In this case, we have considered all of the arguments made in both parties' briefs, as well as the cases and other publications cited therein, and have considered the PSI in the overall context of the defendant's sentence, as requested by the defendant. Nevertheless, we conclude that there was no abuse of discretion here. With regard to the reliability and objectivity of the PSI, as described above, at the start of the sentencing hearing, the trial judge asked the parties if they received copies of it, and both counsel for the State and defense counsel indicated that they had received it and had no additions, deletions, or corrections to make to it. Thereafter, the trial judge stated that he would "accept the pre-sentence investigation as written and make it part of the court record for purposes of this sentencing hearing." Thus, defense counsel did not object to the PSI, and we are not aware of any legitimate grounds upon which defense counsel could have raised an objection. Moreover, we agree with the State that when considered as part of the overall context of this case, there is nothing remarkable, alarming, or suspicious about the PSI, and the mere fact that it was written by the same probation officer who filed the probation violation report in this case does not in any way undermine our confidence in the trial judge's ability to properly appraise and consider the PSI as he determined the defendant's sentence. As stated above, we have examined the PSI as requested by the defendant, and we do not believe it "led"—or in any way contributed—to a sentence that was excessive and disproportionate, because, as explained below, we do not believe the defendant's three-year sentence was either excessive or disproportionate.

¶ 19    Moreover, although the defendant repeatedly questions "the deterrent effect of incarcerating nonviolent drug addicts," and although the defendant is correct that neither party specifically argued for a sentence to IDOC on the basis of such a sentence's general deterrent effect, the trial judge specifically stated that in his experience "many people come out of the Department of Corrections, and they say I've had enough and don't go back to using again." There is nothing in the record that leads us to believe the trial judge was being anything less than honest

10

about his experience with IDOC and deterrence, and we have no reason to conclude that his reliance on his knowledge of such situations, rather than strictly on the arguments of the parties, was unreasonable or otherwise constituted an abuse of his discretion. Thus, a belief that the defendant, or others, might be deterred by an IDOC sentence in this case was not unfounded and is not indicative of error on the part of the trial judge.

¶ 20     With regard to the defendant's argument that the trial judge erred in sentencing the defendant to *three* years in IDOC in light of the trial judge's statement that "I hope that *a year* in corrections will get you to think about your drug addiction, and when you get out of there, hopefully you'll be—been away from it long enough that you can make the intelligent decision to quit using" (emphasis added), we note that IDOC public records, of which this court may take judicial notice (see, *e.g.*, *People v. Sanchez*, 404 Ill. App. 3d 15, 17 (2010)), show an IDOC admission date for the defendant for this offense of June 25, 2021, and a parole date (to begin serving his one-year term of MSR in this case) of June 24, 2022, which indicates that the trial judge was almost exactly correct in his reckoning that a three-year sentence in this case would lead to the defendant spending approximately a year in IDOC. Again we find no error or basis for error in the trial judge's reasoning or his decision.

¶ 21     We also do not believe that the trial judge's decision to sentence the defendant to IDOC represents "punishment" of the defendant for his behavior while on probation. To the contrary, as the State suggests—and as we have described above—the defendant's failed efforts to comply with probation are well-documented, and could have led a reasonable trial judge to conclude that the defendant simply was not capable of complying with probation, even if it was through no fault of the defendant. Indeed, on appeal the defendant suggests it was his addiction, rather than any sort of malice or obstructionism on the part of the defendant, that led to his failure to comply with probation. A reasonable trial judge could have reached the same conclusion, and there is nothing

11

in the record to suggest that the trial judge in this case harbored any ill will toward the defendant that would have led him to seek to "punish" the defendant for the defendant's behavior on probation. To the contrary, the trial judge's statements at the sentencing hearing that he "hoped" an IDOC sentence would help the defendant beat his addiction, that he "tried to work with" the defendant, and that he had "really wanted [the defendant] to be successful on [his] probation," show that the trial judge was concerned about the defendant's health and future, not that he wished to punish him for failing to comply with probation. Faced with a situation where, based upon the evidence before him, the trial judge reached the reasonable conclusion that the defendant was unlikely to comply with further probation, it was reasonable for the trial judge to determine that a sentence to IDOC was appropriate.

¶ 22    We turn therefore to the question of whether, in light of the fact that the defendant faced a sentence of between two and five years in IDOC for his offense, the three-year sentence he ultimately received was excessive either because it was (1) at great variance with the spirit and purpose of the law in question or (2) manifestly disproportionate to the nature of the offense. See, *e.g.*, *Busse*, 2016 IL App (1st) 142941, ¶ 20. We conclude that it was not. As explained above, when handing down the defendant's sentence, the trial judge stated, *inter alia*, that he believed "that additional probation would deprecate the seriousness of the offender's conduct and would simply be inconsistent with the ends of justice." The conclusion was not unreasonable and does not constitute an abuse of discretion. To date, the Illinois General Assembly has not removed incarceration as a possible penalty for the offense at issue in this case: the Class 3 felony of possession of less than five grams of methamphetamine. It is true, as the defendant contends, that the small amount of methamphetamine at issue in this case is consistent with that of a user rather than of a manufacturer or distributor of methamphetamine, but it is equally true that the Illinois General Assembly took this into consideration when classifying this offense, and when allowing

incarceration as a possible penalty for the offense. Thus, although the defendant has every right to argue that nonviolent addicts or other nonviolent users of methamphetamine should not be incarcerated, the Illinois General Assembly has not, at this point, decriminalized possession of methamphetamine to the extent that incarceration is no longer an option in a case such as this one. It is not the province, or the privilege, of this court to discard the directives of the General Assembly and replace them with our own; accordingly, it would not be appropriate, or wise, for this court to remand this case with instructions that the trial judge must order a sentence other than incarceration, as to do so would usurp the function of the trial judge, and would telegraph to trial judges throughout this district that this court has foreclosed sentencing options that the General Assembly has not. Moreover, having considered the record as a whole, as well as the arguments of the parties and the support they have provided for those arguments, we do not believe that a three-year sentence—as opposed to the minimum two-year sentence, if a sentence of incarceration was to be given—is either (1) at great variance with the spirit and purpose of the law in question or (2) manifestly disproportionate to the nature of the offense. As explained above, the trial judge came to the reasoned conclusion—supported by the record—that probation was not a viable option in this case, and his choice of an IDOC sentence very near the minimum possible IDOC sentence cannot be said to demonstrate a "great variance" with the spirit and purpose of the law against possessing methamphetamine under the facts and circumstances of this case, and likewise cannot be said to be "manifestly disproportionate" to the nature of the defendant's crime in this case.

¶ 23    Finally, we note that with regard to factors in mitigation, the trial judge noted that "[t]he defendant neither caused nor threatened to cause serious harm to another person," and that he had "considered the nature of the offense, the attending circumstances, the history, character and propensities of the offender, the chances of his reform, our efforts we've made to try to reform him, [and] the objective of restoring the offender to useful citizenship." There is no "affirmative

evidence" in the record that the trial judge failed to consider these factors, and thus we presume

that his statement that he did consider them when fashioning the sentence is accurate. See *Busse*,

2016 IL App (1st) 142941, ¶ 22. Likewise, with regard to the defendant's argument that the trial

judge erred when considering the defendant's prior criminal history as a factor in aggravation,

there is no "affirmative evidence" in the record that the trial judge failed to consider the fact that

the defendant's prior offenses were all misdemeanors, and thus we presume that the trial judge

was aware of this and did consider it appropriately. See *id*. Accordingly, because there was no

error by the trial judge in this case, the defendant's request for plain-error review of his arguments

fails. See, *e.g.*, *Herron*, 215 Ill. 2d at 187.

¶ 24                                    III. CONCLUSION

¶ 25    For the foregoing reasons, we affirm the defendant's three-year sentence to IDOC.


¶ 26    Affirmed.