**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200043-U

Order filed January 28, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Henry County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0043 Circuit No. 16-CF-422 |
| | ) | |
| JOSE R. GUERRERO, | ) ) | Honorable Terence M. Patton, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Justices Holdridge and Lytton concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The State proved defendant guilty of unlawful cannabis trafficking and unlawful possession with the intent to deliver cannabis beyond a reasonable doubt. The court did not abuse its discretion in sentencing defendant.

¶ 2    Defendant, Jose R. Guerrero, challenges the sufficiency of the evidence underlying his convictions for unlawful cannabis trafficking and unlawful possession of cannabis with the intent to deliver. Defendant further argues that his sentence was excessive and defense counsel was ineffective for failing to file a motion to reconsider the excessive sentence. We affirm.

I. BACKGROUND

¶ 4 Defendant was charged with unlawful cannabis trafficking (720 ILCS 550/5.1(a) (West 2016)), unlawful possession with the intent to deliver cannabis (*id.* § 5(g)), and unlawful possession of cannabis (*id.* § 4(g)). Defendant posted bond but failed to appear in court as scheduled. The matter proceeded to a jury trial and defendant was tried *in absentia*.

¶ 5 Andrew Fratzke testified that he was employed with the Illinois State Police. He pulled a vehicle over for speeding on Interstate 80. When he approached the vehicle, he smelled burnt cannabis. Fratzke identified the driver as Danielle Williams and the passenger as Theodore Tramble through their California driver's licenses. Tramble appeared overly nervous and stated they were driving from California to the Chicago area. Fratzke searched the vehicle and located four duffel bags containing approximately 50 pounds of cannabis. Fratzke opined based upon his training and experience that 50 pounds of cannabis would not be for personal use. Fratzke conducted interviews with Williams and Tramble. After speaking with them, the Blackhawk Area Task Force was contacted to complete a more in-depth interview with Tramble. Ultimately, they set up a controlled purchase for the cannabis.

¶ 6 Eric Hamilton testified that he was employed with the Kewanee Police Department, and he was assigned to the Blackhawk Area Task Force. He was contacted in relation to Fratzke's stop and informed that Tramble was willing to cooperate with the investigation. Officers set up a controlled delivery intended for Gary Walker and defendant. Hamilton rented two hotel rooms. Hamilton and other agents were inside one room and Tramble was in the room directly across the hall. Tramble contacted his brother, Walker. Defendant "was brought into this conversation as well." Walker and defendant arrived at the hotel in the same vehicle. Walker entered the hotel and made contact with Tramble. Walker then booked a hotel room. Hamilton testified that during

2

this time, defendant was driving around "going from different parking lots of businesses, we believe conducting countersurveillance, looking for police officers." After Walker booked the hotel room, he and Tramble walked to the nearby gas station. Thereafter, they, along with defendant, met in the rear of the hotel and entered the back door. They proceeded to Tramble's room where the cannabis was located. Subsequently, Walker and defendant exited the room, both carrying duffel bags of cannabis, and were apprehended. On cross-examination, Hamilton stated that when Walker and defendant exited Tramble's room, it looked like they were going to go to Walker's room.

¶ 7        Mark Thatcher testified that he was retired but had been employed by the Illinois State Police. Thatcher participated in the controlled buy and interviewed defendant. Defendant told Thatcher that he rented a residence from Walker in California, but Walker had access to the residence and "could come and go as he pleased." Walker and Tramble were brothers. During the previous week, Tramble arrived at the residence defendant rented from Walker. Tramble and Walker "loaded a shipment of cannabis from the residence into [Tramble's] vehicle for the purpose of taking that cannabis from there to Wisconsin." Defendant was present for that conversation. Defendant "was along for the ride." Both defendant and Walker took a flight from California to Chicago, and upon arrival they rented a vehicle. Defendant transported Walker to Wisconsin and then defendant went to stay with family. On the date of the controlled buy, Walker contacted defendant and advised him that they needed to pick up a shipment of cannabis in Morris, Illinois. Ultimately, after some phone calls with Tramble, they arranged to pick up the cannabis at the hotel. When defendant and Walker arrived, Walker met with Tramble while defendant waited in the vehicle. Defendant drove around the immediate area and circled the nearby parking lots. Walker then contacted defendant and they both entered the hotel and

3

acquired the cannabis. Defendant knew there was cannabis in the bags and for his help Walker was going to compensate him with an eighth of an ounce from each strain of cannabis that was transported from California to Illinois.

¶ 8    Thatcher agreed that the compensation agreement indicated that the cannabis "was Walker's to give." Additionally, Thatcher agreed that defendant was "huge," roughly "[s]ix six, 339." Thatcher testified that the cannabis had a value of roughly $100,000 to $150,000. He agreed that "if you're Mr. Walker, that's worth a lot of money to you" and that if you were concerned with someone trying to take that cannabis from you, it may be nice to have someone around who is six foot six inches and 339 pounds. While on redirect, the State asked if defendant was clear that he was assisting Walker in bringing cannabis into Illinois and Thatcher replied affirmatively. However, on recross-examination, defense counsel clarified with Thatcher that while he said defendant assisted Tramble and Walker with bringing the cannabis to Illinois, defendant's statement was that Tramble and Walker loaded the cannabis in the vehicle and that defendant was told it was going to Wisconsin. Additionally, defendant had mentioned that Walker questioned why the bags containing the cannabis in Illinois were different than those loaded in California.

¶ 9    An Illinois State Police crime laboratory employee testified that the material in the duffel bags tested positive for cannabis and there was over 5000 grams.

¶ 10   The court did not present jury instructions on an accountability theory and the State did not argue accountability in closing arguments. The jury found defendant guilty on all counts.

¶ 11   Defendant was not present for the sentencing hearing. During that hearing, the court stated it was only sentencing defendant on the unlawful cannabis trafficking conviction because it determined the other convictions merged. The State argued that the presentence investigation

4

report (PSI) set forth a lack of compliance and noted that defendant had failed to appear various times in this case, including for his jury trial. The State further noted defendant's criminal history which included various drug-related offenses and his lack of compliance with his sentences in those cases. The State argued that the aggravating factors included defendant's prior history, that the conduct is likely to happen again, and the deterrence of others. The State sought the imposition of the minimum sentence of 12 years' imprisonment. Defense counsel noted that defendant had health issues. Counsel argued that the offense did not cause anyone harm, defendant did not anticipate that it would, and it was a victimless crime. Counsel acknowledged that "there [was] not a lot of factors in mitigation that [he could] argue." He requested that defendant be sentenced to the minimum of 12 years' imprisonment.

¶ 12    The court stated that it considered the nature and circumstances of the offense, the PSI, counsels' arguments, the cost of incarceration, and defendant's rehabilitative potential. It determined that the only mitigating factors were that the criminal conduct did not cause or threaten serious physical harm and that defendant did not contemplate that it would. The court found defendant's criminal history and the need to deter others were aggravating factors. The court stated that defendant "is a drug dealer of cannabis, that's what he is." The court continued, noting a manufacture/delivery of tetrahydrocannabinol (THC) case, which was amended based on preferred prosecution to a possession misdemeanor, as well as a 2013 Wisconsin conviction for manufacture/delivery of THC and a 2013 Illinois conviction for manufacture/delivery of cannabis. The court reiterated

> "[s]o he is a drug dealer. That's what he is. He failed to appear for his trial, he took off, on the run, basically, thumbed his nose at the Court, that was even after he got arrested on a warrant once, posted bond, got out, and he took off again, he

5

needed to have another warrant. So I don't believe that the minimum jail sentence is proper for someone who takes off on the run, doesn't show up, and has a history of selling drugs."

The court sentenced defendant to 20 years' imprisonment. After the court pronounced the sentence, defense counsel requested that a notice of appeal be filed on defendant's behalf and that he be allowed to withdraw. The court granted counsel's motion to withdraw. Defendant did not file a motion to reconsider sentence. Defendant appeals.

¶ 13                                    II. ANALYSIS

¶ 14                            A. Sufficiency of the Evidence

¶ 15        Defendant challenges the sufficiency of the evidence as to his convictions for unlawful cannabis trafficking and unlawful possession with the intent to deliver cannabis. He argues that the State failed to prove beyond a reasonable doubt that he caused the cannabis to be brought into Illinois and that he had the intent to deliver it.

¶ 16        In assessing the sufficiency of the evidence, we must determine whether the evidence, when viewed in the light most favorable to the State, would permit any rational trier of fact to find that the State proved the elements of the offense beyond a reasonable doubt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). "This standard of review does not allow the reviewing court to substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). "[I]t is the function of the trier of fact to determine the credibility of the witnesses, the weight to be given to their testimony and the inferences to be drawn from the evidence." *People v. Akis*, 63 Ill. 2d 296, 298 (1976). We will not retry the defendant and must allow all reasonable inferences from the evidence in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42. Additionally,

6

"the trier of fact is free to believe part of one's testimony without believing all of it." *People v. Spaulding*, 68 Ill. App. 3d 663, 675 (1979).

¶ 17        To prove defendant guilty of unlawful cannabis trafficking, the State needed to prove that defendant knowingly caused the requisite amount of cannabis to be brought into Illinois with the intent to deliver it. See 720 ILCS 550/5.1(a) (West 2016). To prove defendant guilty of unlawful possession with the intent to deliver cannabis, the State needed to prove that defendant knowingly possessed the requisite amount of cannabis with the intent to deliver it. See *id.* § 5(g). Here, defendant does not dispute that the State proved he was in possession of the requisite amount of cannabis. Therefore, we only address the elements disputed by defendant—that he caused the cannabis to be brought into Illinois and that he had the intent to deliver it.

¶ 18        When viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in favor of the State, we cannot say that the State failed to meet its burden of proof. Specifically, defendant admitted to Thatcher that the cannabis was located at his residence in California and that after the cannabis was loaded into Tramble's car, defendant took a flight to Illinois with Walker. Thereafter, defendant drove Walker to a hotel in Illinois and retrieved the cannabis from Tramble. The jury was free to believe this testimony and apparently did. However, the jury was also free to not believe all of defendant's statements and make reasonable inferences based upon the testimony it did accept. Here, the jury did not believe defendant's statements downplaying his role in bringing the cannabis to Illinois and his ownership or control of the cannabis. The jury could reasonably infer from the fact that the cannabis was in defendant's residence and that he flew to Illinois and ultimately gained possession of the cannabis, that he had some ownership or control over the cannabis, and that he either took a role in loading the cannabis into Tramble's car or in directing that it be done. These

7

inferences are bolstered by Hamilton's testimony that defendant appeared to be conducting counter-surveillance by driving around locations near the hotel and defendant's admission that he was driving around. Last, a reasonable jury could infer defendant's intent to deliver based upon the amount of cannabis recovered and Fratzke's testimony that it was inconsistent with personal use. See *People v. Robinson*, 167 Ill. 2d 397, 410-11 (1995) (providing that the quantity of a controlled substance can be sufficient evidence to prove intent where the amount could not reasonably be viewed as being for personal use). Therefore, viewed in the light most favorable to the State, the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt.

¶ 19                                                    B. Sentencing

¶ 20       Defendant argues that his sentence was excessive in light of his conduct and the seriousness of the offense. In this regard, he argues that he had a minor role in the offense and that it was a victimless crime. Defendant further argues that the sentence actually reflected the court's disdain for his absence rather than the seriousness, nature, and circumstances of the offense.

¶ 21       As an initial matter, defendant acknowledges that this issue was not preserved for review because a motion for reconsideration was not filed. However, he asserts that the failure to file such motion was due to counsel's ineffectiveness. To prevail on a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[I]f [an] ineffective-assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, a court need not decide whether counsel's performance was constitutionally deficient." *People v. Griffin*, 178 Ill. 2d 65, 74 (1997). "To show actual prejudice, defendant must establish that 'there is a reasonable probability that, but for counsel's unprofessional errors,

8

the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v. Horton*, 143 Ill. 2d 11, 23 (1991) (quoting *Strickland*, 466 U.S. at 694).

¶ 22     "It is well settled that a trial judge's sentencing decisions are entitled to great deference and will not be altered on appeal absent an abuse of discretion." *People v. Jackson*, 375 Ill. App. 3d 796, 800 (2007). A reviewing court "must not substitute its judgment for that of the trial court simply because the reviewing court would have weighed the factors differently." *Id.* at 800-01. A sentence that falls within the statutorily prescribed range is presumptively valid (*People v. Busse*, 2016 IL App (1st) 142941, ¶ 27), and "is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense" (*People v. Franks*, 292 Ill. App. 3d 776, 779 (1997)). Further, "a court is not bound by the sentencing recommendation of the State." *People v. Streit*, 142 Ill. 2d 13, 21-22 (1991).

¶ 23     Here, defendant's sentence for unlawful cannabis trafficking of more than 5000 grams was well within the range of 12 to 60 years' imprisonment provided for by statute. See 720 ILCS 550/5.1(b) (West 2016) (providing that a person convicted of cannabis trafficking shall be sentenced to not less than twice the minimum term of imprisonment authorized by subsection 5(f) or 5(g) of the Cannabis Control Act, based upon the amount of cannabis caused to be brought into the state and not more than twice the maximum term of imprisonment authorized by those subsections); *id.* § 5(g) (providing that the offense with respect to more than 5000 grams of a substance containing cannabis is a Class X felony); 730 ILCS 5/5-4.5-25(a) (West 2016) (providing that the sentencing range for a Class X felony is generally 6 to 30 years' imprisonment). Therefore, defendant's sentence is presumptively valid. See *Busse*, 2016 IL App (1st) 142941, ¶ 27. Additionally, we cannot say that the sentence is manifestly disproportionate

9

to the nature of the offense, especially taking into consideration, as the sentencing court did, defendant's criminal history which included several drug-related convictions and the need to deter others. And while defendant takes issue with the court's apparent disdain for his absence, the court could consider such absence as an aggravating factor. See *People v. Sole*, 357 Ill. App. 3d 988, 994 (2005) (affirming a defendant's sentence when the circuit court had cited the failure to appear for sentencing as an aggravating factor); *People v. Williams*, 97 Ill. App. 3d 394, 405 (1981) (stating that absence indicates "disrespect for the law [citation] and *** may be taken into account by the trial court at a hearing in aggravation and mitigation. Such conduct may reflect on a defendant's general moral character, which is a proper area of inquiry by the trial court"). Based on the foregoing, we conclude that defendant's sentence was not excessive and therefore, defendant was not prejudiced by counsel's failure to file a motion to reconsider sentence.

¶ 24                                    III. CONCLUSION

¶ 25          The judgment of the circuit court of Henry County is affirmed.

¶ 26          Affirmed.